**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **PIPER ROBINSON,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No. BPG-10-3658** |
| **GREYSTONE ALLIANCE, LLC,** | * | |
| **Defendant.** | * | |

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## MEMORANDUM

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4. (ECF No. 11.) Currently pending is defendant's Motion for Summary Judgment and supporting memorandum (ECF Nos. 15 & 15-1), to which no opposition has been filed.[1] No hearing is deemed necessary. Loc. R. 105.6. For the reasons discussed herein, defendant's motion (ECF No. 15) is GRANTED.

## I. BACKGROUND

Plaintiff, proceeding pro se, filed a Complaint in the District Court of Maryland for Washington County on November 30, 2010, alleging that Greystone Alliance, LLC ("Greystone"), a collection agency based in Getzville, NY, "illegally and maliciously accessed

---

[1] In light of his pro se status, the Clerk sent plaintiff a letter advising him of the pendency of the motion and of his right to respond. (ECF No. 16.) A copy of Federal Rule of Civil Procedure 56 was attached to the letter. (Id.) When no response was filed, the undersigned also sent plaintiff a letter, strongly encouraging him to file a response and extending the deadline for doing so. (ECF No. 17.) This letter was docketed electronically on the court's CM/ECF system, and a hard copy was mailed to plaintiff at the address listed on his Complaint.

the personal credit bureau record of Plaintiff on Trans Union, a consumer-reporting agency, and caused an injury."  (ECF No. 2 ¶ 6.)  Plaintiff further alleges that since he "does not have a business relationship with Defendant, has not applied for employment, credit terms, nor does [he] have a collection account with Defendant," Greystone did not have a "permissible purpose" for accessing his personal credit history.  (Id. ¶ 7.)  Plaintiff claims that he sent Greystone letters stating that the inquiry on his credit report was fraudulent, but no action was taken.  (Civil Continuation Sheet, Id. at 4.)

Plaintiff alleges that Greystone violated:  (1) the Fair Credit Reporting Act ("FCRA"),15 U.S.C. § 1681 et. seq.; (2) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; (3) the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 et seq.;[2] (4) the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301 et seq.; and the Maryland Collection Agency Licensing Act ("MCALA"), Md. Code Ann., Bus. Reg. § 7-101 et seq.[3]  (Id. at 4-6.)  Plaintiff also seeks damages for loss of opportunity,[4] defamation, and negligence.  (Id. ¶¶ 15-31.)  Defendant removed to this Court on December 30, 2010.  (ECF No. 1.)

In its Memorandum in Support of its Motion for Summary Judgment, Greystone asserts that it was referred plaintiff's delinquent account for collection by Arrow Financial Services,

---

[2] Plaintiff's Complaint incorrectly identifies the statute as the "Maryland Fair Debt Collection Practices Act."

[3] Plaintiff's Complaint misidentifies § 7-301 of MCALA as contained in the "Maryland Fair Debt Collection Practices Act."

[4] While "loss of opportunity" is listed as a separate count, in the paragraphs below, plaintiff simply lists his alleged damages as a result of Greystone's actions.  In other words, it would appear that this is part of plaintiff's damages request and not a separate cause of action. Loss of opportunity can support an award of damages under the FCRA.  Lawrence v. Trans Union LLC, 296 F. Supp. 2d 582, 588 (E.D. Pa. 2003).

LLC ("Arrow"). (ECF No. 15-1 at 2 (citing Frisicaro Aff. ¶ 3).) Greystone claims that it "requested information from Trans Union to assist [it] in locating Robinson" and that "Trans Union provided an address and telephone number for Robinson." (Id. (citing Frisicaro Aff. ¶ 5).) Greystone sent a letter to plaintiff, which was "not returned to Greystone as undeliverable," and attempted to contact plaintiff by telephone, but was unable to reach him. (Id. (citing Frisicaro Aff. ¶¶ 6, 7).) Greystone further claims that it "never received any written communication from Robinson via mail, email or facsimile." (Id. (citing Frisicaro Aff. ¶ 8).) Greystone asserts that it "did not furnish information concerning Plaintiff's Arrow account to any credit reporting agency." (Id. (citing Frisicaro Aff. ¶ 9).) After Greystone was unable to reach plaintiff, Arrow recalled his account, and Greystone took no further action. (Id. (citing Frisicaro Aff. ¶ 10).)

## II. <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[5] A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The only facts that are properly considered "material" are those that might affect the outcome of the case under the governing law. <u>Id.</u> The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); <u>Pulliam Inv. Co. v. Cameo Props.</u>, 810 F.2d 1282, 1286 (4th Cir. 1987).

When considering a motion for summary judgment, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party. <u>Matsushita Elec.</u>

---

[5] Effective December 1, 2010, Federal Rule of Civil Procedure 56 was "revised to improve the procedures for presenting and deciding summary judgment motions" to make them "more consistent with those already used in many courts." Fed. R. Civ. P. 56 advisory committee's note. The summary judgment standard, however, "remains unchanged." <u>Id.</u>

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). On those issues for which the non-moving party will have the burden of proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in the rule. Fed. R. Civ. P. 56(c); Mitchell v. Data General Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993). If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. Celotex, 477 U.S. at 322-23.

Where, as here, the nonmoving party fails to respond, the court may not automatically grant summary judgment. See Fed. R. Civ. P. 56(e). While the party's failure to respond "may leave uncontroverted those facts established by the motion," the court must nonetheless "review the motion . . . and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993).

## III. DISCUSSION

### A. Plaintiff's FCRA Claims

#### 1. § 1681b

Plaintiff alleges that Greystone violated the FCRA because it did not have a "permissible purpose" for accessing his personal credit record. (ECF No. 2 ¶ 7.) The FCRA was enacted to protect consumers from inaccurate or arbitrary credit reporting. Korotki v. Attorney Servs. Corp. Inc., 931 F. Supp. 1269, 1276 (D. Md. 1996). Section 1681b of the FCRA limits the purposes for and circumstances under which a consumer reporting agency may furnish a consumer report.

15 U.S.C. § 1681b.

Greystone argues that it is not subject to liability under this provision because it is not a "consumer reporting agency," and only "consumer reporting agencies" are regulated by § 1681b. (ECF No. 15-1 at 5-6.)  The Fourth Circuit, however, has interpreted § 1681b to apply broadly to users of consumer credit information, including debt collectors.  Yohay v. Alexandria Emps. Credit Union, Inc., 827 F.2d 967, 972 (4th Cir. 1987); see also Korotki, 931 F. Supp at 1275-76 ("[T]he Fourth Circuit has concluded that users of consumer reports also must comply with § 1681b. . . . Thus, whether defendants are users or consumer reporting agencies, they could only obtain Korotki's credit report if they had a permissible purpose.").  Accordingly, this argument fails.

Alternatively, Greystone argues that it had a "permissible purpose" for obtaining plaintiff's contact information from Trans Union because it was attempting to collect plaintiff's delinquent account.  (ECF No. 15-1 at 4-5 (citing § 1681b(a)(3)(A)).)  Section 1681b(a)(3)(A) of the FCRA states that a consumer credit report is furnished for a "permissible purpose" where the party requesting the report "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer."  15 U.S.C. § 1681b(a)(3)(A).

Debt collection is a permissible purpose for obtaining a consumer credit report under the FCRA.  See Korotki, 931 F. Supp. at 1276 (use of a credit report to obtain an address at which to serve consumer to collect a debt was a "permissible purpose" under the FCRA); Robinson v. TSYS Total Debt Mgmt., Inc., 447 F. Supp. 2d 502, 512 (D. Md. 2006); Shah v. Collecto, Inc., 2005 WL 2216242, at *12 (D. Md. Sept. 12, 2005) (collection agency permissibly obtained

credit report to pursue debt collection against plaintiff).  As long as the debt collector has "reason to believe" that the consumer owes the debt, the debt collector may permissibly obtain the consumer's credit report without violating the FCRA.  <u>Korotki</u>, 931 F. Supp. at 1276 ("reason to believe" standard applies in evaluating whether user had permissible purpose).  Plaintiff has not come forward with any evidence that Greystone obtained his credit information for some purpose other than collection of plaintiff's debt or that Greystone did not have "reason to believe" that plaintiff's debt was valid.  Accordingly, Greystone is entitled to summary judgment on this claim.

      2.  <u>§ 1681s-2(a)</u>

Plaintiff alleges that he sent Greystone four letters notifying it that its inquiry into his credit record was fraudulent and that Greystone received the letters but failed to act on them. (ECF No. 2 at 4.)  Plaintiff claims that Greystone's conduct gives rise to a violation of FCRA § 1681s-2(a)(1)(A), which provides that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."  (<u>Id.</u>)  Plaintiff also claims that Greystone violated § 1681s-2(a)(1)(B), which prohibits a person from furnishing "information relating to a consumer to any consumer reporting agency if (i) the person has been notified by the consumer . . . that specific information is inaccurate; and (ii) the information is, in fact, inaccurate."  (<u>Id.</u>)

Plaintiff has no cause of action for alleged violations of § 1681s-2(a), as the FCRA expressly reserves the enforcement of § 1681s-2(a) to federal and state officers. [6]  <u>See</u> 15 U.S.C.

---

[6] There is a private cause of action under § 1681s-2(b), which imposes duties on furnishers of credit information to investigate and report alleged inaccuracies in credit information, after receiving notice <u>from a credit reporting agency</u> that a consumer has disputed the accuracy or completeness of the information furnished.  (emphasis added).  Plaintiff has not alleged any facts that could be construed as asserting a valid cause of action for violation of §

§ 1681s-2(c) & (d).  Section 1681s-2(c) states that the FCRA sections establishing a private right of action for noncompliance, §§ 1681n and 1681o, do not apply to violations of § 1681s-2(a).  15 U.S.C. § 1681s-2(c).  Further, § 1681s-2(d) provides that "[[s]ubsection (a)] of this section . . . shall be enforced exclusively as provided under section 1681s of this title by the Federal agencies and officials and the State officials identified in section 1681s of this title."  15 U.S.C. § 1681s-2(d); see also Beattie v. Nations Credit Fin. Servs. Corp., 69 Fed. App'x 585, 589 (4th Cir. 2003) ("[T]he FCRA does not provide the Beatties with a private cause of action [for a violation of § 1681s-2(a)(1)(A)]. More specifically, this particular statutory language may be enforced only by federal and state agencies and officials.").  Accordingly, Greystone is entitled to summary judgment on this claim.

### B.  Plaintiff's FDCPA Claim

Plaintiff alleges that Greystone violated §§ 1692g and 1692e(8) of the FDCPA.  The FDCPA is aimed at safeguarding consumers from abusive and deceptive debt collection practices by debt collectors.  United States v. Nat'l Fin. Svcs., Inc., 98 F.3d 131, 135 (4th Cir. 1996).  Section 1692g requires that a debt collector send a written validation notice within five days of their initial communication with the consumer stating:  (1) the amount of the debt, (2) the name of the creditor to whom the debt is owed, (3) if the consumer does not dispute the debt within 30 days, the debt will be assumed valid, (4) if the consumer disputes the debt within 30 days, the debt collector will provide the consumer with written verification of the debt and (5) upon written request, send the debtor the name and address of the current creditor, if different from the original creditor.  15 U.S.C. § 1692g.  Section 1692e(8) prohibits a debt collector from "[c]ommunicating or threatening to communicate to any person credit information which is

---

1681s-2(b).

known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

      1.  <u>Statute of Limitations</u>

Section 1692k(d) of the FDCPA provides that "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Greystone argues that plaintiff's "FDCPA claims are based upon the September 29, 2009 inquiry, and the alleged failure to send an initial § 1692g notice," which Greystone asserts that it mailed to plaintiff on September 29, 2009. (ECF No 15-1 at 7 (citing Frisicaro Aff. ¶ 6).) Since the alleged violations took place more than one year before plaintiff's Complaint was filed,[7] Greystone argues that plaintiff's claims are time-barred under the FDCPA's one year statute of limitations.[8] (<u>Id.</u>)

While ordinarily "the statute of limitations begins to run when a communication violating the FDCPA is sent," when the violation involves allegedly unlawful credit agency reporting, the appropriate date for calculating the limitations period is the date on which the consumer should have known of the violation. <u>Akalwadi v. Risk Mgmt. Alternatives, Inc.</u>, 336 F. Supp. 2d 492, 501 (D. Md. 2004) (calculating limitations period from date consumer received credit report that inaccurately reflected his indebtedness, not date debt collector reported debt to credit reporting

---

[7] Plaintiff's Complaint was filed in the District Court of Maryland for Washington County on November 30, 2010. (<u>See</u> ECF Nos. 1, 2.) While Greystone asserts that "Robinson filed his Complaint on December 3, 2010," this is the date Greystone removed the case to this court. Using the November 30, 2010 date does not affect Greystone's analysis.

[8] Greystone did not plead the statute of limitations as an affirmative defense in its Answer to plaintiff's Complaint. Ordinarily, a statute of limitations is a treated as an affirmative defense that must be raised in a party's Answer or is deemed waived. Fed. R. Civ. P. 8(c)(1), 12(b). While courts are split on the issue of whether § 1692k(d) is a statute of limitations or jurisdictional requirement, the only court in this Circuit to address the issue has held that § 1692k(d) is a jurisdictional prerequisite and thus not subject to waiver or tolling. <u>Chisholm v. Charlie Falk Auto Wholesalers, Inc.</u>, 851 F. Supp. 739, 749-50 (E.D. Va. 1994).

agency).  Presumably, plaintiff did not become aware of the alleged violation of § 1692e(8) until

he first obtained his credit report listing the Greystone inquiry.  Since it is not clear from the

pleadings or Greystone's motion when this took place,[9] the court declines to hold that plaintiff's

§ 1692e(8) claim is time-barred.

As to the alleged violation of § 1692g for failure to provide a written validation notice,

Greystone has submitted the affidavit of Daniel Frisicaro, Director of Support Services, attesting

that he is familiar with plaintiff's account and averring that a letter containing the requisite §

1692g disclosures was mailed to plaintiff on September 29, 2009.  (ECF No. 15-2 ¶ 6.)  A copy

of the letter is attached to Mr. Frisicaro's affidavit.  (Id. Ex. 2.)  Under Federal Rule of Civil

Procedure 56(e), "[i]f a party . . . fails to properly address another party's assertion of fact as

required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the

motion."  As plaintiff has failed to come forward with any evidence to dispute Greystone's

assertion that it sent plaintiff a § 1692g notice on September 29, 2009, and as this is more than

one year before plaintiff's Complaint was filed, the court concludes that plaintiff's § 1692g claim

is time-barred.

2.  § 1692g

Even assuming that plaintiff's § 1692g claim is not time-barred, for reasons discussed

more fully below, plaintiff's claim cannot survive summary judgment on the merits.

Plaintiff alleges in his Complaint that Greystone "failed to communicate with Plaintiff

initially," as required under § 1692g(a). (ECF No. 2 at 4.)  As Greystone argues, Plaintiff cannot

---

[9] In his first letter to Greystone on July 30, 2010, plaintiff states the he "received an alert
from Experian that there was a 'hard credit inquiry'" on his credit report from Greystone, but
does not state when that occurred.  (ECF No. 2-1 at 4.)  It is not clear when the copy of plaintiff's
credit report that is attached to his Complaint was first obtained (it appears to have been printed
on November 26, 2010).  (Id. at 3.)

prevail on a claim under § 1692g(a) because Greystone sent plaintiff a written validation notice that included the required disclosures. (See Frisicaro Aff. ¶ 6 Ex 2.) The letter stated (1) the amount of the debt, (2) that plaintiff's account with HSBC Card Services, Inc. was referred to Greystone for collection, (3) that unless plaintiff disputed the debt in writing within 30 days, Greystone would assume the debt's validity, (4) that if plaintiff disputed the debt within 30 days, Greystone would obtain verification of the debt and mail plaintiff a copy of the verification, and (5) upon written request from plaintiff within 30 days, Greystone would provide plaintiff with the name and address of the original creditor, if different from the current creditor. (Id.) This is consistent with the requirements outlined in § 1692g(a). See 15 U.S.C. § 1692g(a) (requiring debt collector send consumer written validation notice stating: (1) amount of debt, (2) name of creditor, (3) if consumer does not dispute debt within 30 days, debt will be assumed valid, (4) if consumer disputes the debt within 30 days, debt collector will provide consumer with written verification of debt and (5) upon written request, send debtor name and address of current creditor, if different from original creditor).

Greystone cites authority from other jurisdictions in support its argument that § 1692g(a) does not require receipt of the notice by the consumer, only that a notice be "sent" by the debt collector. (ECF No. 15-1 at 8 (citing Mahon v. Credit Bureau, Inc., 171 F.3d 1197, 1201 (9th Cir. 1999); Johnson v. Revenue Mgmt. Corp., 52 F. Supp. 2d 889, 892 (N.D. Ill. 1999); McNally v. Client Servs., Inc., 2007 WL 4561152, at *4 (W.D. Pa. Dec. 20, 2007)); see also Antoine v. J.P. Morgan Chase Bank, 757 F. Supp. 2d 19 (D.D.C. 2010) (debtor collector complied with FDCPA in mailing notice to debtor; it was irrelevant whether debtor actually received the notice.) In Senftle v. Landau, et al., however, the court considered a debtor's denial that he received the debt collector's initial § 1692g notice in reviewing the debt collector's motion for

summary judgment.  390 F. Supp. 2d 463, 474 (D. Md. 2005).  The court stated:

> Senftle . . . denies that he received the June 2001 letter.  Whether Senftle in fact
> received the June 2001 letter is certainly <u>material</u> to his FDCPA claims.  Senftle,
> however, has failed to attach an affidavit attesting to this under oath. This failure
> is fatal to his claim that he did not receive notice of his rights under 15 U.S.C. §
> 1692g(a). When opposing a motion for summary judgment, Federal Rule of Civil
> Procedure 56(e) requires the nonmoving party to go beyond the pleadings and by
> his own affidavit, or by the "depositions, answers to interrogatories, and
> admissions on file," designate "specific facts showing that there is a genuine issue
> for trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).  The Court, moreover, on
> May 19, 2005, sent a very specific Memorandum to Senftle, cautioning him to
> supplement his Opposition to the Motion for Summary Judgment with an affidavit
> denying receipt of the June 2001 letter under oath. While Senftle provided a
> supplemental affidavit touching upon several tangential issues, nowhere in it did
> he affirm under oath, which is to say under penalties of perjury, that he did not
> receive the June 2001 letter.  The Court must therefore conclude that there is no
> genuine issue of fact as to whether Senftle received the June 2001 letter, and
> hence that he in fact received it.

<u>Id.</u>

Plaintiff has failed to oppose Greystone's motion entirely, let alone submit an affidavit

attesting to his lack of receipt of Greystone's initial letter.  As plaintiff has not met his burden

under Federal Rule of Civil Procedure 56(e), the court may treat as undisputed Greystone's

assertion that it sent plaintiff an initial notice, pursuant to § 1692g(a).  Accordingly, plaintiff's

claim under § 1692g(a) must fail.

Plaintiff also claims that Greystone "continuously failed to provide validation of the

alleged debt."  (ECF No. 2 at 4.)  Section 1692g(b) of the FDCPA provides that if the consumer

disputes the debt in writing within 30 days of the initial communication, as required under

subsection (a), the debt collector must cease collection until it obtains verification of the debt and

mails a copy of the verification to the consumer.  15 U.S.C. § 1692g(b).

Greystone argues that plaintiff cannot prevail on his claim under § 1692g(b) because he

failed to dispute the debt within the requisite 30-day period.  (ECF No. 15-1 at 9-11.)  Plaintiff's

first letter to Greystone stating that he did "not owe any consumer debts" was faxed on July 30, 2010. (ECF No. 2-1 at 4.) Treating as undisputed Greystone's assertion that it sent plaintiff an initial letter on September 29, 2009, plaintiff waived any right to obtain verification of the debt by not notifying Greystone that the debt was disputed before October 29, 2009. See Senftle, 390 F. Supp. at 475 (debtor waived right to dispute debt by not seeking verification of the debt within 30 days of debt collector's initial communication). Accordingly, plaintiff cannot prevail on a claim under § 1692g(b).

Alternatively, Greystone argues that, even if plaintiff's rights under § 1692g(a) had not lapsed, plaintiff cannot prevail on a claim under § 1692g(b) because Greystone ceased all collection activity on plaintiff's account prior to the date plaintiff first disputed the debt. (ECF No. 15-1 at 10 (citing Frisicaro Aff. ¶ 10).) Section 1692g(b) plainly states that "[i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt." 15 U.S.C. § 1692g(b) (emphasis added).

Plaintiff's account was recalled by Arrow on July 9, 2010, several weeks before plaintiff's first letter disputing the debt was sent to Greystone on July 30, 2010. (Frisicaro Aff. ¶ 10.) Greystone took no further collection action on plaintiff's account. (Id.) Plaintiff has not come forward with any evidence disputing this assertion, so the court may consider it uncontroverted for purposes of reviewing Greystone's motion. Fed. R. Civ. P. 56(e). Once Greystone ceased collection of the debt, any obligation it had under § 1692g(b) was satisfied. See Humphrey v. Brown, 2011 WL 53081, at *3-4 (D. Md. Jan. 7, 2011) ([Section 1692g(b)] "requires only that a debt collector cease collection activity when a debt is disputed; it does not

require the debt collector to take any affirmative action to cancel debt collection activity previously initiated.") (citing <u>Maynard v. Cannon</u>, 650 F. Supp. 2d 1138, 1144 (D. Utah 2008); <u>Sambor v. Omnia Credit Servs., Inc.</u>, 183 F. Supp. 2d 1234, 1242 (D. Hawaii 2002); <u>Shimek v. Weissman, Nowak, Curry & Wilco, P.C.</u>, 374 F.3d 1011, 1013-14 (11th Cir. 2004)); <u>see also</u> FTC Opinion Letter, December 23, 1997 ("[T]here is nothing in the FDCPA that requires a response to a written dispute if the debt collector chooses to abandon its collection effort with respect to the debt at issue.") (citing <u>Smith v. Transworld Sys., Inc.</u>, 953 F.2d 1025, 1032 (6th Cir. 1992)). Accordingly, the court finds, alternatively, that since Greystone ceased collection before plaintiff disputed the debt, Greystone did not violate § 1692g(b).

> 3. <u>§ 1692e(8)</u>

Plaintiff's Complaint also alleges a violation of §1692e(8) of the FDCPA, which prohibits a debt collector from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." (ECF No. 2 at 4.) Greystone argues that it did not violate this provision because it "never spoke with Robinson regarding the account" and "did not furnish information regarding the delinquent account to a credit reporting agency." (ECF No. 15-1 at 11 (citing Frisicaro Aff. ¶¶ 7, 9).) Plaintiff, however, asserts a violation of this provision based on Greystone's failure to notify Trans Union that plaintiff had disputed Greystone's inquiry into his credit record. (<u>Id.</u> ("Defendant never marked the inquiry as 'disputed,' [as] a copy of his report dated 11/26/2010 . . . still shows the inquiry and no dispute notification.").)

Plaintiff has produced no evidence to suggest that, at the time Greystone accessed plaintiff's contact information from Trans Union, it was aware of, or should have been aware of

any dispute.  See Shah v. Collecto, Inc., 2005 WL 2216242, at *10 (D. Md. Sept. 12, 2005)

("[Section 1692e(8)] expressly requires knowledge, and Plaintiff provides no evidence that CCA

knew or should have known that the debt was invalid when it initially reported the information to

the [credit reporting agencies].").  Indeed, by the time plaintiff first disputed Greystone's inquiry

in July 30, 2010, Greystone had already ceased all collection activity on plaintiff's account.  As

plaintiff has offered no factual support for his claim that Greystone violated § 1692e(8),

summary judgment is appropriate.

### C.  Plaintiff's MCDCA, MCPA, and MCALA Claims

Plaintiff claims that Greystone violated § 14-202(3) of the MCDCA, which provides that

a debt collector must not "[d]isclose or threaten to disclose information which affects the debtor's

reputation for credit worthiness with knowledge that the information is false."  (ECF No. 2 at 5.)

Plaintiff alleges that "[b]y virtue of the letters Plaintiff sent to Defendant, Defendant violated

§14-202 by disclosing to a consumer reporting agency information which adversely affected the

Plaintiff's reputation for creditworthiness."  (Id.)

Greystone argues that it is entitled to summary judgment on this claim because it "never

spoke to Robinson regarding the delinquent account" and did not disclose information to a credit

reporting agency about plaintiff's Arrow account.  (ECF No. 15-1 at 12 (citing Frisicaro Aff. ¶¶

7, 9).)  Accepting plaintiff's assertion that Greystone's inquiry into his credit record caused

information affecting plaintiff's reputation for creditworthiness to be "disclosed" to a credit

reporting agency,[10] plaintiff has not pointed to any evidence that Greystone knew the information

---

[10] According to Trans Union's website, "[c]redit inquiries are records created when
someone looks at your credit information. . . . Credit inquiries are recorded for potential creditors
and lenders to see when you are applying for credit. Too many credit inquiries makes potential
creditors decide you are spending more than you can afford."
http://www.transunion.com/corporate/personal/consumerSupport/consumerResources/credit-

was false or acted with reckless disregard as to its falsity at the time of the disclosure.  See

Spencer v. Henderson-Webb, Inc., 81 F. Supp. 2d 582, 595 (D. Md. 1999) ("[D]efendants can be

found liable under paragraphs (3) or (8) of the MCDCA for disclosing information or threatening

to enforce a right with actual knowledge or reckless disregard as to the falsity of the information

or the existence of the right.").  Plaintiff's letters disputing that he owed any consumer debts

were sent 10 months after Greystone's inquiry and several weeks after Greystone had ceased all

collection on plaintiff's account.  (ECF No. 2-1 at 4-12; Frisicaro Aff ¶ 10.)  Accordingly,

summary judgment is appropriate on this claim.

Plaintiff also alleges that Greystone violated the MCPA and the MCDCA by "ignoring

Plaintiff's disputes and failing to act on [plaintiff's] correspondence."  (ECF No. 2 at 5.)  The

MCPA broadly prohibits "unfair or deceptive trade practices," which may include a violation of

the MDCPA.[11]  Md. Code. Ann., Com. Law. § 13-301(14)(iii). Greystone argues that it did not

receive any correspondence from plaintiff, which the court may accept as uncontroverted for

purposes of reviewing Greystone's motion, and further points out that plaintiff's dispute letters

are dated after plaintiff's account was recalled by the creditor.  (ECF No. 15-1 at 12 (citing

Frisicaro Aff. ¶¶ 8, 10).)   As plaintiff has not generated any issues of fact as to his claims that

Greystone engaged in unfair or deceptive trade practices, beyond the conclusory assertions in his

Complaint, Greystone's motion is granted as to this claim.

Plaintiff also asserts that Greystone violated MCALA, because it did not obtain a

collection agency license until July 20, 2010, after it initiated collection activity on plaintiff's

---

inquiries.page.

[11] Plaintiff has not advanced, nor is the court aware of, any case law standing for the
proposition that a failure to respond to a consumer dispute constitutes an unfair or deceptive
trade practice under the MCPA.

account.  (ECF No. 2 at 5.)  MCALA requires that "a person must have a license whenever the person does business as a collection agency in the State."  Md. Code Ann., Bus. Reg. § 7–301(a). Attached to plaintiff's Complaint is a Financial Regulation Public Query indicating that Greystone was originally issued a Maryland collection agency license on July 20, 2010.  (ECF No. 2-1 at 1.)

Greystone argues that it obtained a Maryland collection agency license on March 6, 2009, before undertaking efforts to collect plaintiff's delinquent account. (ECF No. 15-1 at 12-13 (citing Frisicaro Aff. ¶ 11 Ex. 3).)  In support of this argument, Greystone submits the affidavit of Daniel Frisicaro attesting, under oath, that "Greystone obtained a Maryland collection agency license on March 6, 2009" and that "[o]n July 20, 2010, Greystone obtained an updated license as a result of an address change.  (Id.)  Attached thereto is a copy of Greystone's Maryland collection agency license listing an effective date of March 6, 2009, as well as a second license reflecting a different address and listing an effective date of July 20, 2010.  (Id. Exs. 3, 4.) Greystone's sworn affidavit and copies of its Maryland collection agency licenses eliminate any factual dispute as to Greystone's liability under MCALA.  Accordingly, Greystone is entitled to summary judgment on this claim.

### D.  Plaintiff's Defamation & Negligence Claims

Plaintiff's Complaint also pleads a cause of action for defamation (ECF No. 2 ¶¶ 20-24) and negligence (Id. ¶¶ 25-31).  Greystone argues that these claims are preempted by the FCRA. Section 1681h(e) of the FCRA provides that "no consumer may bring any action or proceeding in the nature of defamation . . . or negligence with respect to the reporting of information against . . .  any person who furnishes information to a consumer reporting agency . . .  except as to false information furnished with malice or willful intent to injure such consumer.  15 U.S.C. §

1681h(e); <u>see also</u> <u>Spencer v. Henderson-Webb, Inc.</u>, 81 F. Supp. 2d 582, 597 (D. Md. 1999) (FCRA provides qualified immunity from state law claims unless defendant acted with malice or willful intent to injure) (internal citations omitted).

Plaintiff has offered no factual support for his allegation that Greystone's inquiry into his credit report was "malicious, willful, and wanton and to the total disregard of Plaintiff's rights." (ECF No. 2 ¶ 23.)  Greystone has attested under oath that it obtained plaintiff's credit report as part of its effort to collect plaintiff's delinquent account, which is a permissible purpose under the FCRA, <u>see</u> Part III.A.1, <u>infra</u>, and that it has no record of receiving any correspondence from plaintiff.  (ECF No. 15-1 at 14 (citing Frisicaro Aff. ¶¶ 3, 5, 8).)  As plaintiff has not produced any evidence that Greystone acted with malice or willful intent to injure, the court finds that plaintiff's state law claims are preempted by the FCRA.

Even assuming the claims are not preempted, plaintiff's defamation claim cannot survive summary judgment on the merits.  In order to assert a <u>prima facie</u> case of defamation under Maryland law, plaintiff must establish that:  (1) the defendant made a defamatory statement to a third person, (2) the statement was false, (3) the defendant was legally at fault in making the statement, and (4) the plaintiff thereby suffered harm." <u>Offen v. Brenner</u>, 402 Md. 191, 198, 935 A.2d 719, 723-24 (2007).  There is simply no evidence to support plaintiff's assertion that Greystone made false statements about plaintiff to Trans Union (ECF No. 2 ¶ 21), or that any such statements "tend[ed] to expose [plaintiff] to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." <u>Offen</u>, 402 Md. at 199, 935 A.2d at 724 (defining defamatory statement) (internal citations omitted).  Moreover, there is no evidence that Greystone was legally at fault in making any alleged false statements.  Greystone has attested under oath that it requested

plaintiff's contact information from Trans Union in order to collect on plaintiff's delinquent account, which Arrow represented to Greystone was valid and owed. (ECF No. 15-1 at 15 (citing Frisicaro Aff. ¶¶ 3, 5).) Accordingly, the court concludes, alternatively, that Greystone is entitled to summary judgment on plaintiff's defamation claim.

Turning to plaintiff's negligence claim, plaintiff alleges that Greystone breached its "duty of reasonable care not to injure the Plaintiff's privacy, general reputation, or credit reputation" by divulging plaintiff's personal credit history. (ECF No. 2 ¶ 27.) Plaintiff has not cited, nor is this court aware of, any authority in Maryland recognizing a duty of care in the context of debt collection. Even assuming that Greystone owed plaintiff a duty of care, as Greystone argues, a debt collector may rely on a creditor's representation that a debt is valid. See Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999). Here, Greystone properly relied on Arrow's representation that plaintiff's debt was in fact owed when it undertook collection activity against plaintiff. As plaintiff cannot establish that Greystone owed him a duty of care and has produced no evidence to give rise to a factual dispute as to whether Greystone breached such a duty, summary judgment is appropriate on plaintiff's negligence claim.

### E.  Plaintiff's Claim for Punitive Damages

Greystone also moves for summary judgment on plaintiff's claim for punitive damages, asserting that there is no evidence of "actual malice, ill will or evil motive" necessary to justify such an award. (ECF No. 15-1 at 16 (citing Owens-Illinois, Inc. v. Zenobia, 325 Md. 420, 460, 601 A.2d 633, 652 (1992) (plaintiff must prove by clear and convincing evidence that defendant acted with actual malice, which is characterized by evil motive, intent to defraud, or intent to injure, to support award of punitive damages under Maryland law); Fairfax Savings, F.S.B. v. Ellerin, 94 Md. App. 685, 619 A.2d 141 (1993)).) As plaintiff has produced no evidence that

Greystone acted with actual malice, Greystone is entitled to summary judgment on the issue of punitive damages.[12]

## IV. CONCLUSION

For the foregoing reasons, Greystone's motion for summary judgment (ECF No. 15) is GRANTED. A separate Order shall issue.

June 28, 2011

_____/s/_____
Beth P. Gesner
United States Magistrate Judge

---

[12] While not addressed in Greystone's motion, plaintiff's Complaint also appears to assert a claim for punitive damages under the FCRA. (ECF No. 2 ¶ 19.) In order to prevail on a claim for punitive damages under the FCRA, plaintiff would have to show that Greystone willfully violated the statute's provisions. 15 U.S.C. § 1681n(a). To prove willfulness, a plaintiff must "show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of the consumer." Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 418 (4th Cir. 2001). As there is no evidence that Greystone acted willfully in accessing plaintiff's credit record, Greystone is also entitled to summary judgment on plaintiff's claim for punitive damages under the FCRA.